GREGORY A. BROWER
United States Attorney

GREG ADDINGTON
Nevada Bar No. 06875
Assistant United States Attorney
100 West Liberty, Suite 600
Reno, Nevada  89501
Tel.:  (775) 784-5438
Fax:  (775) 784-5181

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| THE COUNTY OF LANDER, a political subdivision of the State of Nevada, | ) ) ) ) | 3:08-cv-0235-BES-RAM |
| Plaintiff, | ) ) | |
| v. | ) ) | REPLY MEMORANDUM IN FURTHER SUPPORT OF |
| UNITED STATES OF AMERICA, etc. | ) | MOTION TO DISMISS |
| Defendant. | ) ) ) | |

        COMES NOW the defendant United States of America, through
its undersigned counsel, and submits the following reply
memorandum in further support of its motion to dismiss this
action.

        Plaintiff Lander County filed its "Complaint for Declaratory
Judgment" with explicit reference to the Declaratory Judgment Act
(28 USC §§ 2201-ff) and the Quiet Title Act (28 USC § 2409a).
The object of the complaint is plainly to establish Lander
County's spurious claim of title to certain property which has
never been transferred from federal ownership.  The United States

filed its motion (#3) to dismiss this action, arguing that the quiet title claim is barred by the applicable statute of limitations and that the Declaratory Judgment Act claim must be dismissed for lack of subject matter jurisdiction.

Lander County responds to the motion with a memorandum (#11) which is properly characterized as incoherent and bereft of any legitimate legal analysis. Lander County's memorandum also betrays the wholly illegitimate purpose for the filing of this action; namely, to advance the interests of a non-party (Dalton Wilson) by creating a wholly illusory claim of "title" to federally-managed lands while, at the same time, avoiding any adjudication of that illusory claim.[1]   Notwithstanding the absence of any cognizable legal reasoning, Lander County's memorandum is useful for verifying the lack of subject matter jurisdiction and the necessity for prompt dismissal of this action.

Lander County emphatically states (several times) that this is not a quiet title action and, further, that no claim is

---

[1]   The pendency of this case was the *sole* basis for the acquittal of Mr. Wilson in a criminal trespass action tried to this court.  See United States v. Dalton Wilson, 3:07-cr-0030-BES.  As explicitly stated in Lander County's opposition memorandum in this action, securing Mr. Wilson's acquittal by suggesting uncertainty regarding the title to the property was the (illegitimate) purpose of this action.

asserted under the Declaratory Judgment Act.[2]   In fact, Lander County states that "...this is not an action brought under any federal law, but rather a State action, under State law, brought in Federal Court for the convenience of the Defendants, so that they did not have to go to the trouble of removing the case from State court to this court..."   See Opposition Memorandum (#11), p.3.

Given Lander County's explicit disavowal of any reliance on the Quiet Title Act (or the Declaratory Judgment Act) as a basis for subject matter jurisdiction, this action should be dismissed. The Quiet Title Act (28 USC § 2409a) is the *exclusive* mechanism for adverse claimants to challenge the United States' title to land. Block v. North Dakota, 461 U.S. 273, 286 (1983); Northern Mariana Islands v. United States, 279 F.3d 1070, 1072 (9th Cir. 2002); Leisnoi, Inc. v. United States, 170 F.3d 1188, 1191 (9th Cir. 1999).   "Only upon passage of the QTA did Congress waive the United States' sovereign immunity with respect to suits involving title to lands." Hawaii v. United States, 676 F.Supp. 1024, 1032-33 (D.Haw. 1988), *aff'd*, 866 F.2d 313 (9th Cir. 1989).   Lander County cannot avoid the strictures of the Quiet Title Act

---

[2]    See Opposition Memorandum (#11): "...this is not a quiet title action nor a declaratory judgment action under federal law..." (p. 1); "...a quiet title action by the County at this time would be premature (which is why it has not been filed)." (p.2); "...this is emphatically NOT a quiet title action..." (p.3); "A quiet title action could not be brought at this time..." (p.4); "The County therefore cannot emphasize enough that this is not and cannot be a quiet title action." (p.4).

(including its limitations period and other jurisdictional prerequisites) by re-casting its title claim as some sort of State-law based claim concerning the validity of a deed.  The complaint (and the opposition memorandum) clearly contests the United States' title to the subject property and clearly seeks to "recover" (sic) ownership and management control of the property. Accordingly, the complaint may proceed, if at all, only under the jurisdictional limitations of the Quiet Title Act.  Since Lander County emphatically opposes treatment of its complaint as a quiet title claim (and, in fact, pointedly disclaims *any* federal statutory basis for this court's jurisdiction), this action must be dismissed.[3]

Ordinarily, the United States would be content to simply establish the legal basis for the requested dismissal of this action.  However, Lander County has made numerous demonstrably false and impertinent statements which require brief rejoinder. Moreover, Lander County's representations to this court are directly contrary to statements made by Lander County counsel to the Lander County Board of Commissioners.  It is apparent that

---

[3]   Lander County's suggestion that its "State-law" claim can be adjudicated by this court because "this matter is akin to any standard Federal diversity case" (whatever that means) in which "state substantive law applies" (see Opposition memorandum, p.3), is nonsensical. This plainly is not a case in which jurisdiction is based on diversity of citizenship.

There is no conceivable basis for this court to exercise jurisdiction over Lander County's State-law based claim (however that claim might be described).  Moreover, a State-law based claim regarding the validity of the 1986 quit-claim deed would be time-barred by operation of State law. See NRS § 361.600.

4

Lander County counsel (Mr. Schaeffer) has falsely represented the circumstances which preceded the filing of this action.

Lander County falsely states that the subject property was transferred by the United States to Thomas Brackney, Sr., in 1918 under the Homestead Act of 1862 (12 Stat. 392; 43 USC §§ 161-ff). See Opposition Memorandum, p.19. In fact, the subject property was *never* patented or otherwise transferred to any person from the federal government (43 USC § 164), there has never been an application for entry of the subject property by any person under the Homestead Act of 1862 (43 USC § 162) , there has never been the required proof of entry on and use of the subject property under the Homestead Act by any person (43 USC §§ 164, 166, 213), and there has never been any payment of any required fees or costs to acquire the subject property by any person under the Homestead Act. In short, no person (including Mr. Brackney) has ever made any attempt to acquire the subject property under the Homestead Act of 1862 and, for that reason, no person has ever acquired any interest (possessory or otherwise) in the subject property adverse to the interests of the United States. Not surprisingly, Lander County provides no evidentiary support for any of the outrageously false statements made by counsel regarding the title history for the subject property. Moreover, even if Mr. Brackney had attempted to acquire the property through patent under the Homestead Act in the early 20th century

5

(which he did not), that effort was rendered a nullity when he purported to transfer his interest in 1929 without having obtained any transferable interest through patent. See 43 USC § 174 (interest may not be alienated prior to patent).[4]

Although counsel for Lander County insists that this is not a "quiet title" action, he advised the Lander County Commission just the opposite. Attached hereto as Exhibit A are the minutes of the December 13, 2007, meeting of the Lander County Board of Commissioners. At page 14 of the minutes, Mr. Schaeffer requests that he be authorized to represent Mr. Dalton Wilson in the (then-pending) criminal matter notwithstanding the conflict of interest. Mr. Schaeffer opines to the Commission that "It's the County's land; it's not the government's land[.]" and that "we [the County] will be in trouble civilly if we try a quiet title action, not from a truly legal standpoint but from a practical standpoint if he [Mr. Wilson] were to be convicted for the federal trespass." Attached hereto as Exhibit B are the minutes of the March 13, 2008, of the Lander County Board of

---

[4]    Lander County argues that it acquired some interest by placing the property on its tax rolls in the remote past and accepting property tax payments from various persons for a so-called "possessory interest" in the property. Under Nevada law, such possessory interests in federally-managed property are explicitly excluded from local taxing authority. See NRS § 361.035. Lander County had no authority to collect a tax on such a possessory interest and no authority to issue a "tax sale deed" to itself for non-payment of such a tax (a copy of the tax sale deed is exhibit 1 to the complaint). Lander County insists that the 1986 quit-claim deed from the Lander County Treasurer to BLM was "void." In fact, the Lander County Treasurer had no interest to convey at that time or at any other time.

Commissioners.  At page 10 of the minutes, Mr. Schaeffer informs the Commissioners that "I want to go back after that property. The way to do it is an action to quiet title."  The minutes thereafter reflects Mr. Schaeffer's request for "permission to file a quiet title action in this matter" and the Commissioner's approval of the motion "to allow the District Attorney's Office to file suit for quiet title on the land stated earlier."[5]

Lander County counsel also accuses the United States of "using a fraudulent document [the 1986 quit-claim deed] in a criminal case" and that the "Federal government [is trying] to put an innocent man in jail."  See Opposition Memorandum, p.11. Lander County counsel also accuses the United States of using "subterfuge" and trickery "to get a bogus deed" in 1986.  Such irresponsible accusations have no legitimate place in this action and do nothing to support Lander County's position.  Rather, such accusations reinforce the clear inference that this action is and always has been a illegitimate effort by Mr. Schaeffer to interfere in the criminal prosecution of Mr. Wilson.

Counsel for Lander County filed this action for the express purpose of creating the illusion of a title dispute in order to interfere in a criminal prosecution.  Having succeeded in that

---

[5]    Ironically, Mr. Schaeffer has done the very thing which he contends was done by the Lander County Treasurer; namely, taken action which was not authorized by the County Commission. Mr. Schaeffer insists that this is not a "quiet title" action but such an action is all that was authorized by the County Commission.

1   enterprise, counsel now asserts that this is not a quiet title

2   action but rather is some sort of State-law based claim

3   concerning the validity of a deed.  Counsel for Lander County has

4   manipulated proceedings in this court for a wholly illegitimate

5   purpose and now seeks to avoid adjudication of the very claim

6   which he urged the Lander County Commission to authorize (and

7   which it did authorize).

8

9        Representing Lander County, counsel has effectively

10  withdrawn the only claim which he was authorized to assert and

11  the only claim which coincides with the allegations of the

12  complaint.  The United States urges dismissal of this action,

13  with prejudice.

14

15                          Respectfully submitted,

16                          GREGORY A. BROWER
                            United States Attorney
17

18                          ___/s/ Greg Addington_____
                            GREG ADDINGTON
19                          Assistant United States Attorney

20

21

22

23

24

25

26

27

28                                  8

# Exhibit A

# Exhibit A

The Honorable Board of Lander County Commissioners met in regular session in the Commission Chambers of the Lander County Courthouse in Battle Mountain, Nevada, on December 13, 2007 at 9:00 A.M.

PRESENT:  BRYAN SPARKS, COMMISSIONER
CHUCK CHAPIN, COMMISSIONER
STEVEN STIENMETZ, COMMISSIONER
WILLIAM E. SCHAEFFER, DEPUTY DISTRICT ATTORNEY
GENE P. ETCHEVERRY, EXECUTIVE DIRECTOR
JOY SWEENEY, HUMAN RESOURCE DIRECTOR
ROGENE HILL, FINANCE DIRECTOR
DONNA J. BOHALL, DEPUTY CLERK

Chairman Bryan Sparks called the meeting to order.

Let the record reflect the presence of a quorum of three Commissioners.

Chuck Chapin led the Pledge of Allegiance.

APPROVAL OF AGENDA NOTICE

The Notice of Posting was reviewed and found to be in order. Commissioner Stienmetz moved to approve the Agenda Notice, as posted. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Approved.

APPROVAL & ACCEPTANCE OF MINUTES

Regular Session Of November 19, 2007

Commissioner Stienmetz moved to approve the minutes of the Regular Session of November 19, 2007, as presented. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Approved.

CORRESPONDENCE

The Board reviewed the following correspondence that is retained in the Clerk's Office:

Provide Safety, Quality Service & Responsible Fiscal Management
For Present & Future

Meeting of December 13, 2007                                          Page 1

---

DOUG FURTADO, BLM, to INTERESTED PUBLIC, regarding Proposed Decision, JD Allotment.

JOE SAWYER, NV DIVISION OF ENVIRONMENTAL PROTECTION, to PARK BLAIR, AL PARK PETROLEUM, regarding Remediation Schedule, BM Conoco Facility ID #5-000326, Petroleum Fund #99-064.

ARLAN G. HINER, BLM, to INTERESTED PUBLIC, regarding livestock grazing regulations/Winnemucca District.

NV Division of Environmental Protection, Public Notice, public solicitation for data & information pertaining to water quality conditions of surface waters in NV.

JOHN ELLISON, CHAIR, ELKO COUNTY BOARD OF COMMISSIONERS, to BRYAN SPARKS, LC CHAIR, regarding Mining Industry Economic Impact in Northeastern NV.

DOUGLAS W. FURTADO, BLM, to SIR/MADAME, regarding current grazing regulations, effective August 21, 1995, containing provisions for public participation in BLM's decision-making process.

JOE SAWYER, NV DIVISION OF ENVIRONMENTAL PROTECTION, to PARK BLAIR, AL PARK PETROLEUM, regarding 2007 3rd Quarter Monitoring Report, BM Conoco, 501 E. Front Street, BM, NV, Facility ID #5-000326, Petroleum Fund Case #99-064.

STEVEN WILLIAMS, US FOREST SERVICE, to INTERESTED PARTY, regarding Plan of Operations from Cougar Gold LLC to conduct exploratory drilling in Nye County, NV.

STEVEN WILLIAMS, US FOREST SERVICE, to INTERESTED PARTY, regarding Plan of Operations from Dimenxico Resources (USA) Ltd. to conduct exploratory drilling in LC, NV.

REPORTS

The Board reviewed the following reports, which are retained in the Clerk's Office:

LANDER COUNTY CLERK - Monies Collected - November 2007.
ARGENTA JUSTICE COURT - Fines & Forfeits - November 2007.
LANDER COUNTY RECORDER - Monthly Report - November 1-30, 2007.
AUSTIN JUSTICE COURT - Financial Report - November 2007.

COMMISSIONER REPORTS

Commissioner Chapin updated the Board regarding his recent meeting with Abel Tapia, FAA, to discuss upcoming capital improvement plans for the Austin and Battle Mountain airports.

Commissioner Sparks updated the Board regarding his recent participation in a tour of the Palo Verde Nuclear Power Plant.

Provide Safety, Quality Service & Responsible Fiscal Management
For Present & Future

Meeting of December 13, 2007                                          Page 2



Commissioner Stienmetz updated the Board regarding a hospital board meeting and a Convention and Tourism meeting he attended recently on behalf of Lander County.

## STAFF REPORTS

Executive Director Gene Etcheverry presented the following staff report to the Board:

"The FAA meeting was very productive. It gets our Austin Airport projects back on line for next year. We will not be held to a standard of building a paved, all-weather road to the Austin Airport...but a very substantial gravel all-weather road, which will serve us best. We've got to have a plan on the Austin Airport that when we decide to put fuel in there we either do it on our own or make that one of the last projects FAA would be willing to fund.
       The estimate for the re-build of Taxiway Alpha at the Battle Mountain Airport is approximately $2.6 million. It's going to be done in phases because of the cost. We're working with our airport engineer to see if we can't change the project a little to cut the cost."

## PAYMENT OF THE BILLS

Commissioner Stienmetz moved to approve payment of the bills, check numbers 24191 through 24330 in the amount of $298,454.24. Seconded by Commissioner Chapin, the motion was voted and carried with Commissioners Stienmetz and Chapin voting "AYE" and with Commissioner Sparks abstaining from the vote on check number 24313 payable to the Tire Factory in the amount of $1,435.48. Approved.

### Jetway Chevrolet, LLC - 2008 Chevrolet Van - Sheriff's Office

Commissioner Stienmetz moved to ratify payment to Jetway Chevrolet, LLC, in the amount of $22,462.38, for a 2008 Chevrolet Van for the Sheriff's Office. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ratification Approved.

### Carson Dodge Chrysler, Inc. - (2) 2008 Dodge Durango SUVs - Sheriff's Office

Commissioner Stienmetz moved to ratify payment to Carson Dodge Chrysler, Inc., in the amount of $47,478.50, for two (2) 2008 Dodge Durango SUVs for the Sheriff's Office. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ratification Approved.

### Bill Cox - Travel Advance - Nuclear Facility Tour

Commissioner Stienmetz moved to ratify payment to Bill Cox, in the amount of $550.00, for a travel advance to attend the Nuclear Facility Tour in Palo Verde, AZ on December 9-11, 2007. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ratification Approved.

### Tom Newland - Travel Advance - Nuclear Facility Tour

Commissioner Stienmetz moved to ratify payment to Tom Newland, in the amount of $600.00, for a travel advance to attend the Nuclear Facility Tour in Palo Verde, AZ on December 9-11, 2007. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ratification Approved.

### Joseph Jones - Travel Advance - Gang Conference

Commissioner Stienmetz moved to ratify payment to Joseph Jones, in the amount of $301.59, for a travel advance to attend a Gang Conference in Las Vegas, NV on December 11-12, 2007. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ratification Approved.

### Reserve Account - Postage - Treasurer's Office

Commissioner Stienmetz moved to ratify payment to Reserve Account, in the amount of $9,000.00, for postage for the Treasurer's Office. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ratification Approved.

### Chuck & Barbara Chapin - Travel Reimbursement - Nuclear Facility Tour

Commissioner Stienmetz moved to ratify payment to Chuck and Barbara Chapin, in the amount of $180.00, for travel reimbursement to attend the Nuclear Facility Tour in Palo Verde, AZ on December 10-11, 2007. Seconded by Commissioner Sparks, the motion was voted and carried with Commissioners Stienmetz and Sparks voting "AYE" and with Commissioner Chapin abstaining from the vote. Ratification Approved.

### Tom Newland - Travel Reimbursement - Nuclear Facility Tour

Commissioner Stienmetz moved to ratify payment to Tom Newland, in the amount of $646.32, for travel reimbursement to attend the Nuclear Facility Tour in Palo Verde, AZ on December 10-11, 2007. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ratification Approved.

### Bill Cox - Travel Reimbursement - Nuclear Facility Tour

Commissioner Stienmetz moved to ratify payment to Bill Cox, in the amount of $327.32, for travel reimbursement to attend the Nuclear Facility Tour in Palo Verde, AZ on December 10-11, 2007. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ratification Approved.

**Deborah Teske - Travel Reimbursement - Nuclear Facility Tour**

Commissioner Stienmetz moved to ratify payment to Deborah Teske, in the amount of $879.56, for travel reimbursement to attend the Nuclear Facility Tour in Palo Verde, AZ on December 10-11, 2007. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ratification Approved.

**Bryan Sparks - Travel Reimbursement - Nuclear Facility Tour**

Commissioner Stienmetz moved to ratify payment to Bryan Sparks, in the amount of $96.00, for travel reimbursement to attend the Nuclear Facility Tour in Palo Verde, AZ on December 10-11, 2007. Seconded by Co commissioner Chapin, the motion was voted and carried with Commissioners Stienmetz and Chapin voting "AYE" and with Commissioner Sparks abstaining from the vote. Ratification Approved.

**Gene Etcheverry - Travel Reimbursement - Nuclear Facility Tour**

Commissioner Stienmetz moved to ratify payment to Gene Etcheverry, in the amount of $276.86, for travel reimbursement to attend the Nuclear Facility Tour in Palo Verde, AZ on December 10-11, 2007. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ratification Approved.

**DMV - License**

Commissioner Stienmetz moved to ratify payment to DMV, in the amount of $18.00, to license three new vehicles for the Sheriff's Department. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ratification Approved.

**Annual Leave Payment Request - Leon Burris - Road & Bridge Department**

Commissioner Stienmetz moved to approve payment of 24 hours of annual leave at $15.22 per hour, for a total payment of $365.28, to Leon Burris, Road and Bridge Department. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Let the record reflect that the Public Works Department has approved the payment request and it has been reviewed by the Finance/Human Resource Department. Approved.

**Annual Leave Payment Request - Sandra Carson - Sheriff's Office**

Commissioner Stienmetz moved to approve payment of 154.21 hours of annual leave at $23.84 per hour, 103.55 hours of accrued sick leave at $23.84 per hour and 6.5 hours of comp time at $23.84 per hour, for a total payment of $6,344.07, to Sandra Carson, Sheriff's Office. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Let the record reflect

that the Sheriff's Office has approved the payment request and it has been reviewed by the Finance/Human Resource Department. Approved.

**PAYROLL CHANGE REQUESTS**

There were no payroll change requests submitted for approval.

**PUBLIC COMMENT**

Battle Mountain resident Steve Ferjanec appeared before the Board to request the opportunity to submit a proposal to manage the Mountain View Golf Course for the 2008 golf season. Austin resident Victor Anttic appeared before the Board to make the following comment for the record:

"I moved to Austin last year. I found a place to stay with my travel trailer. One day I came home and found a ticket that says I have to move in 24 hours. I didn't know the law so I moved. Mrs. Gandolfo had some trailers on her property. I don't know if she has license or not. I moved in there. Somebody else called again to the Building Department. They issued her a summons to move me. It looks to me like it's a selected enforcement. Travel trailers are licensed by the State of Nevada. I counted about fifty in this town and also in Austin. If there's a law for me to move my trailer, then everyone should be on the same condition."

Deputy District Attorney William Schaeffer responded to Mr. Anttic's comments, as follows:

"This is one of the cases referred by the Building Department to our office. We're working on it. The warning letter they got shouldn't have gone out. We will be getting that part of things worked in a little while. This is all premature and it's not something you can handle directly, which is why it's not an agenda item. If we encounter problems that can't be resolved, they can come back and put it on the agenda. You can disregard any of those notices for the time being."

Executive Director Gene Etcheverry noted for the record that the Building Official recently submitted a written letter of resignation with an effective date of December 21st. Austin resident Dom Louise appeared before the Board to make the following comment for the record:

"Lillian Gandolfo, at my request, sent me a copy of the letter that was sent to her by Gay Rock. I briefly looked over it and it really is incomplete. There are pages missing. It doesn't give the true essence of December 21st. The wording is selective. She should know what's going on. She's upset. When she reads this, she can't really get the true essence of what the law is telling her. This needs to be explained to her."

Austin resident Charles Alexander appeared before the Board to make the following comment for the record:

"I bought a piece of property that had a trailer court on it. I applied to the County Commissioners for a business license. They turned me down and said it was not zoned for it. I personally helped build this trailer park in

the '90s. It's always had trailers on it. Why cannot I get a license to it?"

1) **Budget Review & Update:** Let the record reflect the presence of Austin via telephone conference. Finance Director Rogene Hill presented the following update to the Board:

"All costs through November 30th have been reviewed with no areas of concern. Joy and I participated in a conference call on Tuesday sponsored by the ABD Insurance and Financial Services, Bickmore Risk Services and Nevada Public Agency Pool. Topics addressed were the general background on GASB 45, AB 286, SB 544 and SB 457. Also discussion of employers nationally and in Nevada, determinations of OPEC liability, OPEC funding vehicle, the plan design options with the employer obligations surrounding GASB 45, how the legislature interacts to affect the OPEB liability and what factors to evaluate when considering PEBS. We're working with PERS to get information put together for our actuary.

Yesterday I attended the Newmont Quarterly Breakfast meeting. On January 1, 2008 there will be no more production at Lone Tree. They'll be in reclamation/clean-up mode. They'll still be running their assay lab. They have three expansions going on at the Phoenix project - the crusher, tailings dam construction and expansion of their stockpile. They are fully staffed - 499 employees. The TS Power Plant is winding down. They have 150 employees at this time. They will bring the commercial power on-line July 1, 2008.

We're still having ambulance problems. We're not receiving run sheets from Austin. We have started to get calls from vendors wondering where their payments are. We're not receiving any of the invoices to be processed. Don't know what needs to be done there, but I think that's one area that needs to be addressed."

Let the record reflect that this matter was an update only. No Action - Update Only.

## PUBLIC HEARING

2) **Public Hearing & Approve/Disapprove Lander County Ordinance No. LC 2007-15, An Ordinance Replacing Lander County Code Title 2, Chapter 2.44, Section 2.44.060, By Repeal & Amendment, To Provide For Bringing The Legal Holidays Listed In The County Code In Line With Those Provided For In Nevada Revised Statutes; & Other Matters Properly Relating Thereto:** Chairman Bryan Sparks called the public hearing to order. Let the record reflect the presence of Austin via telephone conference. The Board reviewed and discussed proposed Ordinance No. 2007-15, an ordinance to bring the legal holidays listed in the County code in line with those provided for in Nevada Revised Statutes, as presented by Deputy District Attorney William Schaeffer. Commissioner Stienmetz moved to approve and adopt Lander County Ordinance No. LC 2007-15, an ordinance replacing Lander County code Title 2, Chapter 2.44, Section 2.44.060, by repeal and amendment, to provide for bringing the legal holidays listed in the County code in line with those provided for in Nevada Revised Statutes. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Ordinance Approved.

## COMMISSIONERS

3) **Discussion & Possible Action Regarding 2006-2007 Audit Report As Presented By Kafoury, Armstrong & Co.:** Let the record reflect the presence of Austin via telephone conference. Shelly Drake and Kim Farley of Kafoury, Armstrong and Company appeared before the Board to present the fiscal year 2006-2007 independent auditors' report for Lander County. The Board reviewed and discussed the following auditor's comments as prepared and submitted by Kafoury, Armstrong and Company:

STATUTE COMPLIANCE

Disclosure on compliance with Nevada Revised Statutes and Nevada Administrative Code is contained in Note 2 to the financial statements.

PROGRESS ON PRIOR YEAR STATUTE COMPLIANCE

The following actions were taken during 2006-2007 relating to potential statute violations as reported in the June 30, 2006 audit report:

- The statute violation under NRS 176.059 was due to a miscalculation which has been corrected and should eliminate any future violations.
- The statute violation under NRS 350.067 has been rectified by following proper procedures to obtain medium term financing & notifying all County personnel of the proper procedures of obtaining any type of financing. This should prevent any future violations.
- The statute violation of NRS 354.626 was due to a last minute unanticipated expense. All efforts were made during the current fiscal year to monitor expenditures & avoid any violations. However, the County was unable to avoid all potential violations.

PRIOR YEAR AUDIT RECOMMENDATIONS

There were no specific recommendations made in the audit report for the year ended June 30, 2006.

CURRENT YEAR AUDIT RECOMMENDATIONS

We did not find any financial weaknesses of a magnitude to justify inclusion within our audit report.

Ms. Drake presented testimony regarding new auditing standards to be implemented next fiscal year; and made the following comment for the record:

"I'm here today to promote the fact that we've asked Rogene to try to go through and start the documentation to gain efficiencies for Lander County so we're not doing it from scratch. She will need the support of the entire County."

Commissioner Chapin moved to approve and accept the Financial Statements and Independent Auditor's Report for Lander County for the fiscal year ended June 30, 2007. Seconded by Commissioner Stienmetz, the motion was voted and carried unanimously. Approved.

4) **Discussion & Possible Action Regarding Request By Jan Morrison For Lander County Board Of Commissioners To Sign Nevada Department Of Transportation (NDOT) Application For Encroachment On State Route 722 At MP 29.74 For Access To Reese River Ranches Subdivision, Unit 1:** Let the record reflect the presence of Austin via telephone conference. Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

* Ralph Heninger, on behalf of Reese River Ranches developer Jan Morrison, requests that the Board sign the Nevada Department of Transportation (NDOT) application for encroachment on SR 722 at MP 29.74 for access to Reese River Ranches subdivision, Unit 1;
* The final map for the Reese River Ranches Subdivision Phase I was approved by the Board at the November 19, 2007 meeting;
* An encroachment permit must be granted by NDOT for the roadway into the subdivision to access SR 722;
* The encroachment application must be signed by the Commission Chairman to be considered by NDOT.

Commissioner Stienmetz moved to approve the application of Reese River Ranches developer Jan Morrison for encroachment on SR 722 at MP 29.74 for access to Reese River Ranches subdivision, Unit 1; and authorize the Chair to sign the application Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Approved.

**FINANCE**

5) **Discuss & Approve/Disapprove Write-Off Of Uncollectible &/Or Unrecoverable Lander County Ambulance Billings:** Let the record reflect the presence of Austin via telephone conference. Finance Director Rogene Hill requested approval to write-off the following ten (10) uncollectible/unrecoverable ambulance billings:

Run #2006505: Service incurred on January 2006. Amount to be written off - $121.33.
Run #2006917: Service incurred on January 2006. Amount to be written off - $191.03.
Run #2006299: Service incurred on July 2006. Amount to be written off - $210.40.
Run #000011: Service incurred on November 2005. Amount to be written off - $550.00.
Run #2004125: Service incurred on May 2006. Amount to be written off - $460.00.
Run #2006011: Service incurred on January 2006. Amount to be written off - $207.34.
Run #2006336: Service incurred on November 2006. Amount to be written off - $91.83.
Run #2006278: Service incurred on September 2006. Amount to be written off - $102.84.
Run #2006272: Service incurred on September 2006. Amount to be written off - $210.40.
Run #2005286: Service incurred on September 2005. Amount to be written off - $1,270.00.

Executive Director Gene Etcheverry requested write-off of one ambulance billing, in the amount of $500.00; and presented the following justification in support of the request: the named "patient" was not provided treatment by EMT's, but was riding (as a passenger only) in the ambulance with a friend who was injured in a motor vehicle accident.

Commissioner Chapin moved to approve write-off of ten (10) ambulance billings returned by Medicaid as stale-dated and uncollectible, in the amount of $3,415.17; and approve write-off of one (1) ambulance billing which was erroneously billed and unrecoverable in the amount of $500.00. Seconded by Commissioner Stienmetz, the motion was voted and carried unanimously. Write-Offs Approved.

6) **Discuss & Approve/Disapprove Resolution No. 2007-19, A Resolution To Augment The FY 2007-2008 Budget Of The General Fund (Fund 001):** Let the record reflect the presence of Austin via telephone conference. The Board reviewed and discussed draft Resolution No. 2007-19, presented by Finance Director Rogene Hill, as follows:

RESOLUTION NO. 2007-19
Of The Board Of Lander County Commissioners

A RESOLUTION TO AUGMENT THE FY 2007-2008 BUDGET OF THE GENERAL FUND (FUND 001)

WHEREAS, certain areas of the approved budget require changes based on requests from department heads or elected officials which changes are specifically described and detailed below; and

WHEREAS, certain areas of the approved budget require changes to reflect budgeting according to generally accepted accounting principles which changes are specifically described and detailed below; and

WHEREAS, County Commissioners have taken action at prior meetings and directed that the budget impact of the actions be recorded as part of proper budget augmentation processes which changes are specifically described and detailed below;

NOW, THEREFORE BE IT RESOLVED, that the FY 2007-2008 budget be changed as follows:
General Fund (001)

| Account # | Description | Budget | Change | Revised FY 07-08 Budget |
|---|---|---|---|---|
| 001-013-53580 | Repair & Maintenance | $0 | $197,000 | $197,000 |

Note: For replacement of security equipment at the Lander County Public Safety Complex. Source of funds for the increased appropriation will be offset by fund balance higher than anticipated for the year ending FY 06-07.

| Account # | Description | Budget | Change | Revised FY 07-08 Budget |
|---|---|---|---|---|
| 001-000-32102 | Plan Revue Revenue | $5,000 | $25,000 | $30,000 |
| 001-008-57963 | Plan Revue Expense | $12,500 | $25,000 | $37,500 |

Note: Increase Plan Revue Revenue and Expense by $25,000 due to unanticipated revenues which has direct impact on expense.

| Account # | Description | Budget | Change | Revised FY 07-08 Budget |
|---|---|---|---|---|
| 001-023-51010 | Administrative Salaries | $75,600 | $5,295 | $80,895 |
| 001-023-52016 | Medicare | $2,975 | $110 | $3,085 |
| 001-023-52040 | PERS | $22,470 | $7,685 | $30,155 |

Note: At the July 12, 2007 Commission meeting Commissioners approved to increase the Argenta Justice of the Peace position

from the budgeted 3.7% to 7%. Also, there was an error found on the FY 07-08 budget for PERS. Source of funds for the increased appropriation will be offset by fund balance higher than anticipated for the year ending FY 06-07.

Commissioner Stienmetz moved to approve and adopt Resolution No. 2007-19, a resolution to augment the FY 2007-2008 budget of the General Fund (Fund 001); and direct staff to forward the augmentation to the Department of Taxation. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Resolution Approved.

7)   **Discussion & Possible Action Regarding Implementation Of A Lander County Fleet Vehicle/Equipment Use Policy:** Let the record reflect the presence of Austin via telephone conference. The Board reviewed and discussed the draft Lander County Fleet Vehicle/Equipment Use Policy, as presented by Finance Director Rogene Hill. Commissioner Chapin moved to approve and adopt the Lander County Fleet Vehicle/Equipment Use Policy, effective immediately; and direct staff to distribute copies of the policy to all County department heads. Seconded by Commissioner Stienmetz, the motion was voted and carried unanimously. Approved.

**EXECUTIVE DIRECTOR**

8)   **Discussion & Possible Action Regarding Renewal Of Tammy & Jlee Smith DBA Tee's Management Services Agreement With Lander County For Management Of Mountain View Golf Course:** Let the record reflect the presence of Austin, via telephone conference, and Tammy and Jlee Smith for this discussion. Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

  * The original agreement for management services of the Mountain View Golf Course between LC & Tammy Smith was approved on December 11, 2006;
  * The Agreement was for a two-year period with the second year approval being "non-automatic";
  * Ms. Smith formulated the management services business under the name of Tee's Management Services;
  * Official LC records show that the Fictitious Firm Name was filed on March 2, 2007 certifying that Jlee Smith is the sole principal of Tee's Management Service;
  * The Agreement between LC & Tammy Smith & Jlee Smith, dba Tee's Management Service, was signed by Tammy Smith & Jlee Smith (as contractors) on March 9, 2007;
  * The NV Sales Tax Permit & IRS Employer Identification # are issued to Jlee Smith dba Tee's Management Service;
  * This matter is before the Board due to Tammy Smith's request to have her name removed from the Agreement. Ms. Smith has since offered to NOT have her name removed from the Agreement;
  * The two primary conflicts with renewal of the Agreement, given the official documents filed for Tee's Management Services, are: 1) all official documents filed for the business evidence only Jlee Smith as the principal of Tee's Management Service. Only the Management Services Agreement between LC & Tee's Management Service reflects the involvement (and signature) of Tammy Smith, and 2) the Board approved an agreement between LC & Tammy Smith, not Jlee Smith, for management of the Mountain View Golf

*Provide Safety, Quality Service & Responsible Fiscal Management for Present & Future*

Meeting of December 13, 2007                                          Page 11

---

Course for a two-year period, with non-automatic renewal for the second year of the agreement;
  * Changes to the agreement requested by Ms. Smith are for an automatic renewal & opening of the golf course contingent upon weather conditions.

The Board reviewed and discussed a document entitled "Articles of Incorporation", as presented by Ms. Smith. Ms. Smith noted for the record that the document, showing both her and Jlee Smith as owners of Tee's Management Services, has been filed with the State of Nevada. Commissioner Stienmetz made the following comment for the record:

  "When we originally signed the agreement it was only with her (Ms. Smith) doing business as Tee's Management Service. Then all of a sudden Jlee's name came up on it. My concern about having Jlee's name on it, even if he isn't a principle, is he's still a County employee. Are we legal at doing that?"

Deputy District Attorney William Schaeffer responded to Commissioner Stienmetz's concern, as follows:

  "I believe we're okay under those circumstances given the opinions that I reviewed. I don't think there's going to be a problem as far as that goes."

Commissioner Sparks presented testimony regarding various members of the community interested in bidding on the golf course contract. Ms. Smith made the following comment for the record:

  "When I filled out my bid, the contract was supposed to be for one year and then for two years every consecutive thing. My duty was to write the Commission a letter saying I would like to renew my contract. If I had done everything good, I would make money for the County, everything was working good, there was no reason to go out to bid. There's no reason to change if it's not broken."

Mr. Etcheverry noted the following for the record:

  "The original agreement was for automatic renewal into the second year. During formulation of the actual agreement, the non-automatic was put in by legal counsel prior to the agreement being signed by Tammy. The reason for that, as I recall, was if it was not a good fit or if there were performance issues during that first year of operation it gave the Commission the say on whether or not to try for another year. The actual agreement in place is for non-automatic renewal. It was a contentious item."

There was general discussion regarding the pros and cons of renewing the Agreement with a non-automatic versus an automatic renewal clause. Ms. Smith presented justification in support of the automatic renewal clause. Commissioner Chapin moved to renew Tee's Management Services Agreement for management of the Mountain View Golf Course for the 2008 season, if and only if Tammy Smith remains as principal to the Agreement and becomes a legal principal of Tee's Management Services. Seconded by Commissioner Stienmetz, the motion was voted and carried unanimously. Approved.

*Provide Safety, Quality Service & Responsible Fiscal Management for Present & Future*

Meeting of December 13, 2007                                          Page 12

Commissioner Stienmetz presented testimony in favor of seeking an Attorney General's Opinion concerning the legality of contracting golf course management services with a County employee. Commissioner Sparks made the following comment for the record:

"I'm not in favor of the automatic renewal for the second year. Is that something that needs to be addressed? I don't want to be locked in to any contract for two years."

Mr. Etcheverry noted the following for the record:

"Your motion was to approve this for the 2008 season. That is what will be evidenced on the record, so we've approved it for one year. By doing so, you've said we will continue the non-automatic clause in this contract. The discussions were otherwise so we will have to follow-up with Jlee and Tammy. That clarifies it for the public record."

9) **Presentation Of Project Descriptions Received For Community Development Block Grant (CDBG) Applications For The 2008 Funding Cycle:** Let the record reflect the presence of Austin via telephone conference. Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

*   The 2008 CDBG Program criteria limits the number of applications submitted by each eligible entity for competition in this year's funding cycle to one (1);
*   Selection of the CDBG application for LC will be made in a public hearing scheduled for the January 10, 2008 regular Commission meeting;
*   To date, no CDBG applications have been submitted.

**Scott Nicora**, Owner/Manager of the Chukar Hills Mobile Home Park, appeared before the Board to present an overview of a project to be considered for a CDBG grant application. The Board reviewed and discussed the scope of work for the proposed perimeter landscaping project for the Chukar Hills Mobile Home Park, in the total amount of $542,000.00, as presented by Mr. Nicora. Mr. Etcheverry made the following comment for the record:

"For this particular application to qualify as fully as possible there would have to be a declaration made of slum and blight pursuant to NRS 279. You would basically be declaring that part of downtown Battle Mountain as a slum and blighted area. That is a very serious thing for a Board to do. It will have an impact on surrounding property values. But slum and blight doesn't just refer to what we all think of as a dank, dirty slum. It has to do with the lack of infrastructure, the lack of aesthetic qualities of a certain nature.

What that can do for downtown revitalization or other upgrade grants that are available...it enables an area to be qualified for those. The other qualification for CDBG is low-to-mod income. You have to have broad-based community support. There's no match required for CDBG. There's several ways to make a project like this work, if that's a project you choose to fund. That isn't a decision you have to make today."

There was general discussion regarding the potential impact of the proposed project to surrounding property owners. Battle Mountain resident Mickey Yarbro appeared before

the Board to make the following comment for the record:

"I'm sort against the project, per se. But, we've got projects in Lander County that when I was Commissioner we started. We've got a Brownfields project across from the store. We put money into it and there it is. It's sitting there; it's not completed. We're talking about a $500,000.00 project that the County may or may not participate in matching with County dollars, that I absolutely disagree on. Yes, it's going to make the town of Battle Mountain look better, but people going by won't even see it because it's off the beaten path. It's also going to make the property that it surrounds worth a lot more money without the people that own the property putting any money into it. They're going to get a $500,000.00 face lift without any cost to make their property worth $500,000.00 more. This is not a community project."

Let the record reflect that this matter was a presentation only, with no action taken. No Action - Presentation Only.

## DISTRICT ATTORNEY

10) **Discuss & Approve/Disapprove Waiver Of Potential Conflict Of Interest For Deputy District Attorney To Represent Private Client Named Dalton Wilson:** Let the record reflect the presence of Austin, via telephone conference; District Attorney Hy Forgeron; and Austin resident Dalton Wilson for this discussion. Deputy District Attorney William Schaeffer updated the Board regarding this matter, as follows:

"This is my agenda item and I'm stepping out of my role. Mr. Forgeron is here if you have any questions. Just to bring you up to speed...as we discussed at the last meeting or the one before that in regards to some property taken for taxes that subsequently was not kept on the tax rolls for sale but was deeded over to the federal government without authorization. Mr. Wilson is being prosecuted for that by the federal government. It's the County's land; it's not the government's land.

In an effort to get that resolved and worrying, frankly, about the possibility that we could lose that piece of land, I wanted to see if I could represent Mr. Wilson in that matter. Clearly, there's a potential for a conflict of interest with the County. Mr. Wilson has agreed that he will waive any conflict of interest with the County. He understands that if we win this case and the County ends up with the property, he might not get his property back. He's comfortable with that. He realizes that when this is over, if I have to, we'll be going against him and he will be agreeing to all of that in writing before we go forward with this.

The County's interests are primary; his are secondary. But, having said that, we will be in trouble civilly if we try a quiet title action, not from a truly legal standpoint but from a practical standpoint if he were to be convicted for the federal trespass. That is the situation. I would like to be able to go forward. We have other hoops we'll have to go through before I can do that, but if I don't have you guys approval then I'm not going to be able to do that and Mr. Wilson will have to figure something else out."

Mr. Forgeron made the following comment for the record:

"I doubt seriously that there would be an actual conflict in this case. I have no objection. It's a relatively minor federal case involving title to land and I have no objection to Bill going forward with it."

Commissioner Stienmetz moved to approve the waiver of potential conflict of interest for Deputy District Attorney to represent a private client, named Dalton Wilson, and other matters relating thereto. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Approved.

11) **Discuss & Approve/Disapprove Resolution No. 2007-20, A Resolution To Provide For Setting The Number Of Representatives On The Public Land Use Advisory Planning Commission:** Let the record reflect the presence of Austin via telephone conference. The Board reviewed and discussed draft Resolution No. 2007-20, presented by Executive Director Gene Etcheverry, as follows:

RESOLUTION NO. 2007-20
Of The Board Of Lander County Commissioners

A RESOLUTION TO REDUCE THE NUMBER OF MEMBERS ON THE PUBLIC LAND USE ADVISORY PLANNING COMMISSION FROM SEVEN TO FIVE AND OTHER MATTERS PROPERLY RELATING THERETO

WHEREAS, Lander County has the authority to establish the number of members on an advisory board pursuant to LCC 1.08.070(H) [see also, 252.010(C)(3)]; and

WHEREAS, Lander County finds it desirable to reduce the number of members on the Public Land Use Advisory Planning Commission due to chronic problems getting a quorum for said board.

NOW, THEREFORE BE IT RESOLVED, that the number of members of the Public Land Use Advisory Planning Commission is hereby reduced from seven down to five members, with two alternates, effective January 1, 2008.

AND BE IT FURTHER RESOLVED that the two members to be dropped shall first be those who resign or have resigned; and second, if insufficient members have resigned to accomplish the required reduction, then those who have had the worst attendance record for said board's meeting over the six months preceding the posting of the Board of County Commissioners' agenda on which this item first appeared.

AND BE IT FURTHER RESOLVED, that if there is a tie or any dispute regarding which members retain their seats on said board, the Board of County Commissioners shall decide that tie or dispute.

Commissioner Chapin moved to approve and adopt Resolution No. 2007-20, a resolution to provide for setting the number of representatives on the Public Land Use Advisory Planning Commission; and to set the number of representatives on PLUAPC to five members with two alternates. Seconded by Commissioner Stienmetz, the motion was voted and carried unanimously. Resolution Approved.

12) **Discussion & Possible Action Regarding Changes To Allow Street Parking Designations, Markings & Speed Limits By Resolution; & Other Matters Properly Relating Thereto:** Let the record reflect the presence of Austin, via telephone conference, and Public Works Director Roger Sutton for this discussion. Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

* LC Code 10.16.010 enumerates streets/areas of streets designated for parking varying from "parallel parking";
* LC Code 10.16.020 allows for angled parking on any County roadway by passage of resolution;

Provide Safety, Quality Service & Responsible Fiscal Management
For Present & Future

---

* It is not necessary to pass an ordinance to allow for angled parking designation to be implemented by resolution as LC Code currently provides for this;
* LC Code 10.05 establishes the speed limit on all County roads (maximum 45 MPH) & specifically establishes speed limits on designated portions of Hilltop Road, Kingston Canyon Road & Sheep Creek Road;
* LC code 10.08.040(B) requires the Board of Commissioners to adopt speed regulations, as may be necessary, by passage of resolution(s) with the designated speed limit becoming effective after publication in the newspaper once per week over two consecutive weeks.

There was general discussion regarding the possibility of allowing either the Sheriff's Office or Public Works Department to set speed limits in Lander County during emergency situations. The Board directed staff to work with the District Attorney's Office on a possible modification to Lander County Code Chapter 10.08. No Action - Direction Only.

13) **Discussion & Possible Action Regarding Adoption Of 2003 International Building Codes & National Electric Code 2005 Edition:** Let the record reflect the presence of Austin, via telephone conference, and Building Official Joe Lindsey for this discussion. Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

* Adoption of both building & electric codes must be done by passage/adoption of ordinances;
* Specific public notice requirements must be met prior to passage of an ordinance adopting these codes.

The Board reviewed and discussed the 2003 International Building Codes and 2005 National Electric Code, as presented by Mr. Lindsey. The Board directed staff to perform the filing and public notice tasks required by Nevada Revised Statutes; and request the District Attorney's Office to prepare an ordinance for adoption of the 2003 International Building Codes and National Electric Code 2005 Edition. No Action - Direction Only.

14) **Discussion & Possible Action Regarding Review Of Job Description For Building Official In Relation To Duties Associated With Nuisance Abatement:** Let the record reflect the presence of Austin, via telephone conference; Building Official Joe Lindsey; and Part-time Building Inspector/Code Enforcer Guy Rock for this discussion. Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

* Building Official Joe Lindsey has asked the Board to review his job description as it relates to nuisances & nuisance abatement;
* LC Code Chapter 8.20, LC Nuisance Ordinance, names the Building Official as the authorized individual responsible to "serve citations or issue correction letters for violations of this chapter".

The Board reviewed and discussed the current job description for the Building Official, as presented by Mr. Lindsey. Mr. Lindsey made the following comment for the record:

"Lander County ordinance and job description specify that we have requirements for nuisance abatement. At this point, and over the past year, nuisance abatement has pretty much been kicked under

Provide Safety, Quality Service & Responsible Fiscal Management
For Present & Future

the table. There is no nuisance abatement.

My job description is pretty much my Bible. That's what I go by. My job description sends me to Lander County Code, building codes and zoning enforcement. Chapter 15.04 code of Lander County states that my duty is to enforce compliance with laws to remove illegal or unsafe conditions. My problem is I haven't had cooperation at other offices to do this. I've had a real rough time getting any kind of feedback from the District Attorney's Office. Without that legal counsel it's very hard for me to try to write a letter that meets legal specifications before sending it out when I can't get it out for 5-6 weeks without hearing from someone.

I have a whole file drawer full of past violations that haven't been touched. I don't feel I'm getting the backing I need from the County on the enforcement of nuisance."

Commissioner Chapin made the following comment for the record:

"Down in Austin, Guy, the notices you put out have caused my hair to go pretty gray. I think we've missed something here...the word reasonable in our codes."

Mr. Etcheverry noted the following for the record:

"There is a reasonableness I've seen Joe exercise. We have to afford people due process. I'm used to living under building codes, strictly enforced building codes. Building codes and planning/zoning are meant to give County Commissioners, City Councilman and people in my position gray hair. They're very, very intrusive as far as property rights. The key is to dance that fine line to where it's code enforcement for public safety, morals, health and welfare and then infringement upon property rights."

Battle Mountain resident Mickey Yarbro appeared before the Board to make the following comment for the record:

"Years ago I was on the Commission. We had to almost beg the DA's Office to agree to work with us and the planning commission on enforcing building codes we adopted. Joe doesn't have a badge, he doesn't have a gun, he's not a sworn deputy. When he writes up a nuisance order that something needs to be changed and the DA does not follow through with it, then do we just don't write any more? Are we going to follow the codes we adopted for him as Commissioners, as the planning commission and as the DA's Office? It sounds to me like the DA's Office is not following through with the next step after the violation has been wrote up."

Deputy District Attorney William Schaeffer made the following comment for the record:

"I'm going to object to this. This is amounting to criticism of specifics...first off, because it is the DA's Office, you have no power over. Second off, I don't know which Deputy DA he's referring to, but the open meeting law requires that if you're going to be discussing the competence or character of a person you've got to give notification. You need to stick to the job description."

There was general consensus in favor of maintaining the current Building Official job description. No Action - Discussion Only.

## PLANNING COMMISSION

15)  **Discuss & Approve/Disapprove Parcel Map Per Recommendation Of Lander County Planning Commission For Marvin & Donna Fairbanks, 2426 Presidential Blvd., APN 011-420-02, Splitting Forty Acres Into Four (4) 10-Acre Parcels:** Let the record reflect the presence of Austin via telephone conference. Executive Director Gene Etcheverry requested that this matter be deferred to a future Commission meeting. Deferred.

16)  **Discuss & Approve/Disapprove Parcel Map Per Recommendation Of Lander County Planning Commission For Ron & Sarah Burkhart, 1 Pleasant Hill Drive, APN 011-071-01, Splitting One (1) Parcel Into Three (3) Parcels:** Let the record reflect the presence of Austin, via telephone conference; Community Development Specialist Deborah Teske; and Public Works Director Roger Sutton for this discussion. The Board reviewed and discussed the parcel map for Ron and Sarah Burkhart, 1 Pleasant Hill Drive, APN 011-071-01, splitting one parcel into three parcels, as presented by Ms. Teske. Commissioner Stienmetz moved to approve the parcel map per recommendation of the Lander County Planning Commission for Ron and Sarah Burkhart, 1 Pleasant Hill Drive, APN 011-071-01, splitting one parcel into three parcels; and authorize the Chair to sign after all other signatures have been obtained, seconded by Commissioner Chapin. Battle Mountain resident Mickey Yarbro appeared before the Board to make the following comment for the record:

"I think the map needs to be looked at. If we could go down to agenda item number 21, I think that's going to be a problem on that map when that's discussed. The way the road is right now coming off of 305 and Pleasant Hill Drive where Burkharts is at, the proper way for that road to be is back towards Nawranas about 75 feet and come into 305 that way. That's the proper way that it should have been. You might be able to discuss that when we get to 21. The way it's surveyed right now, it doesn't show it."

Commissioner Stienmetz moved to rescind his previous motion. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Motion Rescinded.

Let the record reflect that this matter was deferred to the afternoon session. *Let the record further reflect the presence of Sarah Burkhart during the afternoon session.* The Board reviewed and discussed the parcel map for Ron and Sarah Burkhart, 1 Pleasant Hill Drive, splitting one parcel into three parcels, as submitted. Commissioner Stienmetz moved to approve the parcel map per recommendation of the Lander County Planning Commission for Ron and Sarah Burkhart, 1 Pleasant Hill Drive, APN 011-071-01, to split one parcel into three parcels; and authorize the Chair to sign after all other signatures have been obtained. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Parcel Map Approved.

**YUCCA MOUNTAIN REPOSITORY PROGRAM**

17)   **Discussion & Possible Action Regarding Review & Approval Of Certification Of Expenditure Of Funds For Yucca Mountain Oversight For FY 2007:** Let the record reflect the presence of Austin via telephone conference. The Board reviewed and discussed the FY 2007 Certification of Expenditure of Funds for the Yucca Mountain Oversight Project, as presented by Executive Director Gene Etcheverry. Commissioner Stienmetz moved to approve the Certification of Expenditure of Funds for Yucca Mountain Oversight for FY 2007; and authorize the Chair to sign the Certification of Expenditure of Funds Under the Energy and Water Development Appropriations Act of 2006. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Approved.

**PUBLIC WORKS**

18)   **Discussion & Possible Action Regarding Advertisement For Bid On Sewer Line Project In Alley Between East Fifth & East Sixth Street From Scott To Reese Street, North Broad Street To North First Street:** Let the record reflect the presence of Austin, via telephone conference, and Public Works Director Roger Sutton for this discussion. Mr. Sutton updated the Board regarding this matter, as follows:

"Parts of the sewer line in the alley between 5th and 6th Streets, from Scott to Reese, are no longer there. From North Broad Street to North 1st Street there's a section that's missing and actually leaking into the ground. I checked with Rogers and made sure funds were there. I got an engineering estimate. The Commissioners have talked about doing Altenburg around the school. There's two sections there that we need to replace the sewer line to be able to do Altenburg and Weaver Street. That's in that project too. If we so choose not to do Weaver Street, we could leave that part out. We might as well do it so we can go ahead for future paving projects. It's not that much. You're only looking at about $2 feet. We looked at $178,000.00 to do the job. I don't believe it's going to come into that, but that's probably the worst scenario estimate. I would request that the Commissioners let me have it engineered and take it out to bid."

There was general consensus in favor of including Weaver and Altenburg in the proposed project. The Board directed the Public Works Director to put the project out to bid. No Action - Discussion/Direction Only.

19)   **Discussion & Possible Action Regarding Coverage Of Duties For Public Works Director's Position While On Extended Leave:** Let the record reflect the presence of Austin, via telephone conference, and Public Works Director Roger Sutton for this discussion. Mr. Sutton updated the Board regarding this matter, as follows:

"I go in for surgery in Reno on the 20th. The Doctor is telling me that the best scenario is 3 weeks, the worst scenario is 6 weeks. We should probably put a Commissioner in charge of public works so they

*Provide Safety, Quality Service & Responsible Fiscal Management*
*For Present & Future*

can sign purchase orders. I'm going to put all my lead men on-call 24 hours a day so you can sleep at night."

Commissioner Sparks suggested that Commissioner Chapin be in charge of the Public Works Department during Mr. Sutton's absence. No Action - Discussion Only.

20)   **Discuss & Approve/Disapprove Appointments To 2007-2008 Advisory Board Categories 1, 2, 3, & 4; & Other Matters Properly Relating Thereto:** Let the record reflect the presence of Austin via telephone conference. The Board reviewed and discussed two letters of resignation from Valree Fox and Mark G. Bennett, both resigning from the Lander Economic Development Authority, as submitted. The Board reviewed and discussed two letters received requesting appointment to the Lander Economic Development Authority from the following individuals: Samme Engelson and Amber Snow. Executive Director Gene Etcheverry requested that this matter be deferred to a future Commission meeting to allow LEDA time to review the letters of interest and make a recommendation to the Board. Deferred.

**COMMISSIONERS**

21)   **Discussion & Possible Action To Consider Conveyance Of Remaining 50 Feet Of State Right-Of-Way To All Property Owners Of Mountain View Estates In Exchange For Private Property On Pleasant Hill Drive & Blossom Springs Drive:** Let the record reflect the presence of Austin, via telephone conference; Public Works Director Roger Sutton; and Battle Mountain residents Richard Sumin and Sarah Burkhart for this discussion. Mr. Sumin updated the Board regarding this matter, as follows:

"In 1992 I originated the request for abandonment of surplus right-of-way. It goes back to the Eisenhower thing, the State had 400 feet. Just north of Mountain View Estates, the rest of the way into town, there's only 100 feet of right-of-way. Once you get to Sheep Creek Road and Chukar Lane south there remains 200 feet. It goes back, it has nothing to do with you, but there was a brain surgeon based at commissioners funded by a couple of activists named Rowena Sinclair-Long and Heather Smith Estes who said we had to have a green belt, a bicycle path, etc. They told the State to only give us 100 feet.

In the meantime, and I think this is important, the State told the County you survey what you want to keep for right-of-ways, and then too, we'll put the legal descriptions on them and everything will be cool. Unfortunately, you wind up with the mess you're in now because your predecessors elected to do nothing. Most people are willing to trade this additional 50 feet towards the highway for the affected corners. My property's not involved, but I have a vested interest because I'm a property owner and think we got the short end of the stick in 1992. The property should have been made the same as the jail/Smith property - 100 feet.

I did an informal poll. I know most will trade you the 50 feet. I also know from experience that when you go to do this the State told me we don't do it piecemeal, everybody's got to do it. That's why some of us are going to benefit, but I think you can do it with forty-one cent stamps. You're going to have to do a survey anyway and you won't have to spend thirty, forty, fifty thousand dollars buying these little chunks of property. There's only three contested roads. You have three County roads that are on private property because a predecessor board elected to do nothing."

*Provide Safety, Quality Service & Responsible Fiscal Management*
*For Present & Future*

The Board directed staff to pursue research/open dialogue with NDOT/affected property owners to develop a possible conveyance of property. No Action - Direction Only.

22) **Discussion & Possible Action Regarding Request By Nevada Department Of Public Safety (DPS), Records Bureau, For Local Governments To Revise County Ordinances Regarding Fingerprinting To Comply With Federal Bureau Of Investigation (FBI) Standards:** Let the record reflect the presence of Austin via telephone conference. Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

* Notification was received from the NV Department of Public Safety that, effective August 29, 2008, the FBI will no longer accept fingerprint cards for national criminal background checks (for employment &/or licensing) unless there is a local ordinance accepted by the FBI for those purposes;

* LC has no such "FBI reviewed/approved" ordinance or code in place.

The Board directed staff to work with the Sheriff, District Attorney's Office and Nevada Department of Public Safety personnel to develop an ordinance to submit to the FBI for approval. No Action - Direction Only.

23) **Discussion & Possible Action On The Following Projects/Services:** Let the record reflect the presence of Austin via telephone conference.

**Airport Projects:** Lew Lott, RS&H, was present to update the Board regarding his recent trip to San Francisco to meet with Abel Tapia of FAA to discuss upcoming airport projects for the Battle Mountain and Austin Airports. No Action - Update Only.

**Ambulance Service:** Executive Director Gene Etcheverry updated the Board regarding ongoing problems with the Battle Mountain and Austin Ambulance Services. No Action - Update Only.

**Economic Development:** Executive Director Gene Etcheverry updated the Board regarding four former LEDA board members to be honored at the next regularly scheduled meeting of LEDA. No Action - Update Only.

**Public Lands:** Executive Director Gene Etcheverry updated the Board regarding a NACO Legislative meeting scheduled in Washington DC the third week of March 2008. No Action - Update Only.

**Street/Road Projects:** Public Works Director Roger Sutton updated the Board regarding the status of the Battle Mountain street/road projects; and presented testimony regarding the proposed scope of work for next year's road/street project in the approximate amount of $1.8 million. Lew Lott, RS&H, appeared before the Board to present the following update:

"We're winding down due to the temperature. We didn't get the painting done. We didn't get some of the things done this year. Hunewill is going to be back to finish those. We are holding a substantial amount of money to make sure everything is done. We had some overages this year on the project due to soft areas.

What we'd like to do is get this new road area ready and have it designed. I'd like to try to get it ready to go right after the airport to get a better price. If you gave us the approval to get going on the design, I'd like to get Bob Morley over here to do all the surveying of Altenburg and the other areas. I'll work the fees."

There was general consensus in favor of authorizing Mr. Morley to survey the project under the County's contract. No Action - Update Only.

**ADJOURNMENT**

There being no further business before the Board at this time, Commissioner Stienmetz moved to adjourn the meeting of December 13, 2007. Seconded by Commissioner Chapin, the motion was voted and carried unanimously. Meeting Adjourned.

                              _____
                              CHAIRMAN OF THE BOARD OF LANDER
                              COUNTY COMMISSIONERS AND THE
                              LANDER COUNTY LIQUOR BOARD

ATTEST:

_____
LANDER COUNTY CLERK

*Note: The Board of Lander County Commissioners serves as the Town Board for the unincorporated towns of Battle Mountain and Austin, Nevada.*

# Exhibit B

Exhibit B

The Honorable Board of Lander County Commissioners met in regular session in the Commission Chambers of the Lander County Courthouse in Battle Mountain, Nevada, on March 13, 2008 at 9:00 A.M.

**PRESENT:**   **CHUCK CHAPIN, COMMISSIONER**
                      **BRYAN SPARKS, COMMISSIONER**
                      **WILLIAM E. SCHAEFFER, DEPUTY DISTRICT ATTORNEY**
                      **GENE P. ETCHEVERRY, EXECUTIVE DIRECTOR**
                      **JOY SWEENEY, HUMAN RESOURCE DIRECTOR**
                      **ROGENE HILL, FINANCE DIRECTOR**
                      **DONNA J. BOHALL, DEPUTY CLERK**

**ABSENT:**   **STEVEN STIENMETZ, COMMISSIONER**

Chairman Chuck Chapin called the meeting to order.

Let the record reflect the presence of a quorum of two Commissioners.

Donna Bohall led the Pledge of Allegiance.


## APPROVAL OF AGENDA NOTICE

The Notice of Posting was reviewed and found to be in order. Commissioner Sparks moved to approve the Agenda Notice, as posted. Seconded by Commissioner Chapin, the motion was voted and carried. Approved.


## APPROVAL & ACCEPTANCE OF MINUTES

### Regular Session Of February 28, 2008

Commissioner Sparks moved to approve the minutes of the Regular Session of February 28, 2008, as presented. Seconded by Commissioner Chapin, the motion was voted and carried. Approved.


## CORRESPONDENCE

The Board reviewed the following correspondence that is retained in the Clerk's Office:

**Provide Safety, Quality Service & Responsible Fiscal Management
For Present & Future**

EXHIBIT

B

ELKO COUNTY BOARD OF COMMISSIONERS, to DR. MILTON D. GLICK, UNR, regarding UNR Cooperative Extension Review Committee Draft Report.

ROBERT D. WILLIAMS, NV FISH & WILDLIFE SERVICE, to INTERESTED PARTY, regarding additional review of greater sage-grouse under Endangered Species Act.

NV Division of Environmental Protection Notice of Public Workshops regarding proposed changes to water quality regulations & water quality criteria for Muddy River located in northeast Clark County, NV.

GERALD M. SMITH, BLM, to INTERESTED PUBLIC, regarding efforts to revise existing planning documents.

## REPORTS

The Board reviewed the following reports, which are retained in the Clerk's Office:

**LANDER COUNTY CLERK** - Monies Collected - February 2008.
**AUSTIN JUSTICE COURT** - Financial Report - January 2008.
**ARGENTA JUSTICE COURT** - Fines & Forfeits - February 2008.
**LANDER COUNTY RECORDER** - Monthly Report - February 1-29, 2008.

## COMMISSIONER REPORTS

There were no Commissioner reports presented.

## STAFF REPORTS

Executive Director Gene Etcheverry presented the following staff report to the Board:

* LC received a letter from Ray H. Williams, Jr. resigning from the Public Lands Use Advisory Planning Commission;
* LC received a letter from the Division of Water Resources regarding relinquishment for dedication of water rights in favor of parceling;
* A grant funding program for noxious weed spraying is available through the LC Conservation District for individuals owning at least one acre of land;
* LC's World Human Powered Speed Challenge Paving project application was accepted by the Department of Transportation. The Evaluation Committee will meet next week to rank the applications;
* Six (6) LC department heads recently completed an Essential Management Skills Certificate program through PACT/POOL;
* The BM District is planning to initiate their Resource Management Plan Revision. They've invited the Executive Director & Commissioners to a 3-day workshop in Tonopah, March 25-27, 2008 to discuss planning concepts;
* The US Senate debated the Mining Reform Act yesterday;
* SB 2501, the arsenic water issue, is currently in a Conference Committee.

Deputy District Attorney William Schaeffer made the following comment for the record:

"That [arsenic] standard was passed at the last minute on the last day of the Clinton Administration by an executive order. It is widely felt that it was a last minute gift to the Environmental Lobby. We might want to think about sending a resolution to President Bush to reverse the favor and knock it out on the last day of his Administration."

## PAYMENT OF THE BILLS

Commissioner Sparks moved to approve payment of the bills, check numbers 25060 through 25170 in the amount of $153,886.86. Seconded by Commissioner Chapin, the motion was voted and carried with Commissioner Chapin voting "AYE" and with Commissioner Sparks abstaining from the vote on check number 25157 payable to the Tire Factory in the amount of $1,535.70. Approved.

### Erik Beyer & Assoc., Inc. - Consulting Engineering Services - Austin Sewer Project

Commissioner Sparks moved to ratify payment to Erik Beyer & Associates, Inc., in the amount of $4,151.48, for consulting engineering services for the Austin Sewer project. Seconded by Commissioner Chapin, the motion was voted and carried. Ratification Approved.

### Gray & Associates, Inc. - Austin Sewer Aerial Mapping

Commissioner Sparks moved to ratify payment to Gray & Associates, Inc., in the amount of $10,750.00, for the Austin Sewer Aerial Mapping project. Seconded by Commissioner Chapin, the motion was voted and carried. Ratification Approved.

### Annual Leave Payment Request - Robert S. Rose - Sheriff's Office

Commissioner Sparks moved to approve payment of 144.50 hours of annual leave at $22.70 per hour, 125.87 hours of sick leave at $22.70 per hour and 67.53 hours of comp time at $22.70 per hour, for a total payment of $7,670.33, to Robert S. Rose, Sheriff's Office. Seconded by Commissioner Chapin, the motion was voted and carried. Approved.

## PAYROLL CHANGE REQUESTS

There were no payroll change requests submitted for approval.

## PUBLIC COMMENT

Austin Justice of the Peace **Joe Dory** appeared before the Board via telephone conference to make the following comment for the record:

> "We've been working on tying the courthouse into the T-1 line with the Sheriff's Office. Undersheriff Quick sent me a fax this morning. The equipment we'd have to buy comes to $711.84. I was going to run it past the Commissioners to see what they thought about taking it out of my facilities fees or how would be the best way to pay for that if we decided to do it. Right now in Austin it's dial-up only for Internet service. The only option anybody has in town is to get a little satellite dish, which is expensive. The Undersheriff suggested sharing the Sheriff's Office T-1 line with the Courthouse. It wouldn't cost anything for the T-1 line on our end. All it would cost us is the equipment to hook up to it. It sounds like each office in the Courthouse would be sharing the T-1 line for Internet services."

Let the record reflect that Mr. Dory was directed to work with the Finance Director on this issue. Austin resident **Joy Brandt** appeared before the Board, via telephone conference, to address her concerns regarding problems Austin is currently experiencing with their television reception.

1) **Budget Review & Update:** Let the record reflect the presence of Austin via telephone conference. Finance Director Rogene Hill presented the following update to the Board:

> "I've reviewed costs for February and find no areas of concern. Budget workshops will be held next Wednesday at 8:30 a.m. We're having problems with Medicare payments for our ambulance service. We found they had sent a form to be filled out to get the Medicare information updated. That was not done, so Tammy and Karen have filled out the proper forms. They've been submitted, so it will be about 20 days until we're back in business again. We will have to resubmit all the Medicare they've been so diligently inputting.
>
> Also, through the end of February our accounts receivable we're currently carrying on the Battle Mountain books is $144,507.00. Our Landfill accounts receivable through the end of February - $9,090.00. Our water - $7,522.00 and sewer - $8,684.00.
>
> I've been putting together material for our budget workshop. I don't know if you were aware, but the Sergeant's labor negotiations scheduled for Thursday the 20th has been cancelled until further notice."

Let the record reflect that this matter was an update only. No Action - Update Only.


## PUBLIC HEARING

2) **Public Hearing & Approve/Disapprove Ordinance No. LC 2008-03, An Ordinance Amending Lander County Code Title 1, Repealing Chapter 3 & Amending Chapter 4, Section 030 To Provide For Five County Commissioners To Serve The People Of Lander County; & Other Matters Properly Relating Thereto:** Chairman Chuck Chapin called the public hearing to order. Let the record reflect the presence of Austin, via telephone conference, and Clerk Gladys Burris for this discussion. Deputy District Attorney William Schaeffer updated the Board regarding this matter, as follows:

> "First, I want to try and handle the confusion in the item. You should have had handed out this morning three documents that start off with item two and then have explanations of what each document is.

On the top I have, item two, *the following is the document that was in the packet. It should have been item 9*. We didn't explain when we sent this over to Soveida and I think she got confused. The second of those handouts...*the following is the document that I thought was proposed*. In point of fact, only half of that document, the second half, is what was advertised by the Clerk. In any case, the third document is what the District Attorney's Office is recommending after consultation with former Commissioner Ray Williams Jr., the County Clerk and Commissioner Chapin, as well as earlier discussions I've had with other people.

Under NRS 244.011...that is the statute we ended up apparently operating under. The one I thought was proposed four weeks ago...it's going to provide...I'll read from it at the beginning....*A) The board of county commissioners shall consist of five members elected at large but by district. A candidate for County Commissioner and each Commissioner shall reside in the District for which she/he seeks or holds office*. The next part is *boundaries of the county commissioner districts shall be as follows*. That's one part of it. The second part...because you're also...and this by the way did not get advertised...that first part I read. The second part of that is the part that was advertised. This changes the boundaries of the voting and the names of the voting precincts. Our recommendation is that we go back to square one because of the advertising anomalies and at the next Commission meeting propose the recommendation.

I can try and simplify what the various recommendations are. The first one, the one that was advertised...those boundaries...was done to try to get the numbers of the precincts as nearly equal as possible. All of them would have been in about 500, but it would have resulted in one really gerrymandered district, that is it doesn't come together tightly. The statutes require population based on the 2000 census, but I don't have those numbers readily available. So, as a substitute, in the hopes that it would be close, what I utilized was the voters because we do have the number of registered voters handy. What that proposal did was take Commissioner Sparks' precinct, which is precinct 3, and then took a skinny piece of precinct 4, which is Commissioner Stienmetz's precinct, and added that skinny piece running along the Eureka County line down to Southern Lander County precinct 6. That was to join 3 with 6 because under the statutes you have to have contiguous districts. You can't have precincts sitting out by itself as part of a district.

The Clerk was going to re-draw those two precincts, 3 and 4, to run along the Shoshone Mountains line. After consultation....for a variety of reasons...the gerrymandering being one, the fact that we were basing it not on population but on voters being another, and the fact that any other plan is going to require massive re-drawing... we're going to have to do massive re-drawing in only 3 years...and finally because it is within the discretion of the County Clerk, our recommendation now is the County Clerk not re-draw any precincts because it's just going to be too difficult to get this done in time. As a result, then, we work with the precincts we have and come up with the best numbers we can. We would recommend that you propose at the next meeting rather than make this as an amendment to current item two. Otherwise, it would possibly open up more of a challenge because it is such a tremendous re-write."

The Board reviewed and discussed maps of the proposed new commission districts, as presented by Mr. Schaeffer. Commissioner Chapin made the following comment for the record:

"We've got to do a census in 2010. Right now we don't want to go to the expense to re-draw all these lines and then in 2010 do it again. Gladys came up with this very simple solution of five districts."

There was general discussion regarding the estimated cost to re-district. Austin resident **Ray H. Williams, Jr.** appeared before the Board to make the following comment for the record:

"I don't know what transpired on the meeting of February 14[th]. I did send a letter to the Commissioners with my concerns about the ballot question initially and about the fact that the voters in southern Lander County were assured there would be one representative south of the 40[th] parallel. That's what we tried to come out with in this meeting the other day. The one we all liked the most is the one represented on this map. It's the simplest of all.

That gets District 1 with Argenta Precinct 1 and Argenta Precinct 3 with 586 voters. District 2 has Argenta Precinct 2 with 520. District #3 has Argenta Precinct #5 with 499. District 4 with Argenta Precinct 4 with 548. Then District #5 would be everything south of the 40th parallel, with 311 registered voters. I went on the State Demography site and looked everything up. It was really hard to tell exactly how many people live in southern Lander County. When you look at 311 voters, that's about the population of Austin and then you still have Kingston, Gillman Springs and all the outlying areas. There's a lot of people down there, probably about 1/5 of the population.

If you're going to go to the expense of going to five commissioners, then I think it's only logical we have one down there. Even if it's a little bit off-balanced. I know Mr. Schaeffer's going to argue the legal standing on it, but somebody's got to challenge that before it even comes in question.

One last comment. It's 90 miles to drive down here. It used to be $18.00 to $19.00 for a tank of gas. Today it's $35.00 to $40.00 plus the time. I don't know why you couldn't just amend the thing and approve it today. Why drag it out for another 30 days. You don't need to belabor it to death. This agenda item doesn't say anything about how you're going to break it down. It just says you're going to amend the ordinance to reflect the five commissioners."

There was general consensus in favor of southern Lander County having their own representation. The Board reviewed and discussed amended Ordinance No. 2008-03, as presented by Mr. Schaeffer. Battle Mountain resident **Mickey Yarbro** appeared before the Board to make the following comment for the record:

"When I was a Commissioner and prior to that, we voted at two different elections to have five commissioners. Two times it failed. We had a group of people who wanted to put it back on the ballot to vote for five commissioners. We voted for it and it passed by 32 votes. The proper thing to have done, and this is my opinion, was to have another election two years later to see if we really did want five commissioners or if it was just a fluke. Why do we need five commissioners? I understand that Austin/Kingston need a commissioner. We don't have enough work for five commissioners.

In all of this discussion we've talked about some of the expense, but nobody's ever said how much expense. It's $65,000.00 a year more today for two commissioners and benefits. That's $260,000.00 in four years. Ten years it's $650,000.00. You're going to have to have another office or two. You're going to be paying high dollars for travel, either buying a new vehicle or paying a commissioner to use their own vehicle. Is there really enough work, honest to God work, for five commissioners in this County?

I probably should have spoken out back when it first was put on the ballot to question the way the ballot was, but at the time I didn't know the time frame that we could challenge."

Mr. Schaeffer responded to Mr. Yarbro's comments, as follows:

"The legal response is this...I'm reading from NRS 244.011. *The voters at the election shall vote on the question 'Shall the board of county commissioners be increased to five members?'.* If anybody remembers that is exactly what the question was. If a majority of votes cast approve the question, the

ordinance becomes effective upon certification of the vote by the County Clerk, otherwise the ordinance does not become effective. The vote was certified. The time for challenging an election is long-past. It becomes effective. We are obligated already for five commissioners. The only question is where do we put them from. Everything that Commissioner Yarbro brought up was in the against arguments on the ballot explanation."

There was general discussion regarding the possibility of placing a ballot question on the 2008 general election ballot to repeal the five commissioners. Mr. Williams presented testimony regarding *Lander County's precedent in going against voter's desires*; and stated that *in order for someone to question this there would have to be a court case.*

***Let the record reflect the presence of Commissioner Steven Stienmetz at this time via telephone conference.*** Commissioner Stienmetz was provided a brief overview of today's discussion by Commissioner Chapin and Mr. Schaeffer, respectively. Commissioner Sparks moved to approve an ordinance amending Lander County Code Title 1, replacing Chapter 3 and amending Chapter 4, Section 030 to provide for five county commissioners to serve the people of Lander County; and other matters properly relating thereto, as proposed. Seconded by Commissioner Stienmetz, the motion was voted and carried unanimously. Ordinance Approved.


## EXECUTIVE DIRECTOR

3)    **Discussion & Possible Action Regarding Presentation By Nevada Division Of Forestry Officials Concerning Lander County Assessment For Possible Formulation Of Fire Protection District:** Let the record reflect the presence of Austin, via telephone conference; Tom Turk, Division of Forestry; Bob Ashworth, Deputy State Forester; and Kellie Baratti, Forestry Staff Specialist, for this discussion. Mr. Turk updated the Board regarding this matter, as follows:

> "Last Spring you invited us to do an assessment of the County. The last couple of days we've been around the communities to do visual site-work and assessments of fuels/things that will pose challenges from a wild land perspective to residents, structures and developments around the County. We're compiling that and actually referencing a couple of historical data documents. What we'd like to do is coordinate schedules in April to meet with the Chiefs of each individual volunteer fire department, the Commissioner of record for those areas and Gene to look at our study before we come before the full Commission to make sure we've addressed the communities' desires, needs and concerns. Once that is done and we've put the fine points back together is to schedule to be agendized to come back before this Board with the options/criteria for the communities and what we see that might help you out. We don't want to come here grandstanding or barnstorming. We'll be working for a Board of Commissioners if we put something together."

Commissioner Chapin requested a dollar amount for Lander County's participation in a fire protection district. Let the record reflect that this matter was discussion only, with no action taken. No Action - Discussion Only.

4) **Discussion & Possible Action Regarding Life, Health & Safety Issues Existing In & About The Austin Youth Center Building; Proposed Plan Of Corrective Action To Address Life, Health & Safety Issues; Cost To Perform Emergency Repairs To Austin Youth Center Building; & Action By Commission To Close Facility For Public Use Until Emergency Repairs Are Completed:** Let the record reflect the presence of Austin, via telephone conference, and Part-time Building Inspector/Code Enforcer Guy Rock for this discussion. Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

✳  The Austin Youth Center was "red-tagged" by the LC Building Department on March 5, 2008;
✳  LC Building Official Joe Lindsay provided information, including photographs taken within the building, to document the conditions warranting closure of the building.

Mr. Etcheverry recommended that the Board authorize the Building Official to oversee completion of necessary life/safety repairs to the Austin Youth Center on an emergency basis; authorize expenditures up to a certain amount to cover the cost of the emergency repairs; and authorize closure of the Austin Youth Center until the emergency repairs are completed or until such time as the documented life/safety hazards are removed. Mr. Rock updated the Board regarding the current condition of the Austin Youth Center building; and presented testimony regarding repairs to be completed before the building can officially re-open. Commissioner Chapin made the following comment for the record:

> "As far as red-tagging these County buildings, I feel let's just bring it to the attention of us and we will get it fixed."

Mr. Etcheverry noted the following for the record:

> "Joe and I had a conversation. From now on if there is a red-tag given, either myself or the Commission will be notified. The problem was not only that the building had been closed, but we didn't know it had been closed or why."

The Board directed staff to proceed with repair of the Austin Youth Center building. Austin resident **Dee Helming** appeared before the Board via telephone conference to make the following comment for the record:

> "Joe indicated they were going to have three contractors come out, look at it, and make bids on it. One from Winnemucca, one from Yerington and one from Fallon. I asked him why he didn't ask Kip and he informed me because I'm on the board it would be a conflict of interest."

There was general discussion regarding the following issues: **a)** the estimated cost to repair the building; and, **b)** the possibility of utilizing another building in the Austin area to temporarily meet the needs of the Austin Youth Center. Austin resident **Chuck Austin** appeared before the Board via telephone conference to make the following comment for

the record:

> "I'm on the board of the Youth Center. My concern is this all came to a big head, whereas, if we'd had ongoing inspection/communications with the Commissioners and the County maybe some of this could have been prevented. As a board member, we're working on a budget that's been cut year after year and trying to make the thing go for the kids.  We're down there doing plumbing ourselves as board members, which we probably shouldn't be doing. I would like to start today with an atmosphere of cooperation."

Mr. Etcheverry explained that the Safety Committee is charged with inspecting County facilities and buildings on a regular basis; and noted for the record that the person who was performing inspections on behalf of the Safety Committee left about seven months ago. Commissioner Sparks moved to proceed and set a maximum limit of $8,000.00. Seconded by Commissioner Chapin, the motion was voted and carried. Approved.


## DISTRICT ATTORNEY

5) **Discussion & Possible Action On Designating County Engineer & County Surveyor & Authorizing Expenditures For Possible Survey Of Improperly Deeded Land:** Let the record reflect the presence of Austin, via telephone conference, and Community Development Specialist Deborah Teske for this discussion. Executive Director Gene Etcheverry noted the following for the record:

> "Our County Surveyor has taken issue with the wording of this agenda item. Since Bob Morley is our County Surveyor, he has taken issue with the wording of this because he ultimately will have to oversee whatever gets performed on this land."

Deputy District Attorney William Schaeffer made the following comment for the record:

> "I suggest we table this issue. I was unaware we had a County Surveyor. I had asked, but apparently didn't ask the right people. We will contact Mr. Morley directly."

Ms. Teske noted the following for the record:

> "Bob Morley has been our surveyor for several years. I don't understand this agenda item. If this is for the purpose that the County has to perform a survey map, Bob Morley has to sign off on it as our surveyor. If you're just hiring a surveyor to draw up the map and then our surveyor checks it, that's fine."

Let the record reflect that this matter was tabled. No Action - Discussion Only.

6) **Discussion & Possible Action Regarding Authorizing Legal Action & Expenditures To Recover 80 Acres Of Real Estate Improperly Deeded After Being Diverted From**

**A Tax Sale: N1/2 SW1/4 Section 12, T22N, R47E, MDB&M; APN 05-240-04:** Let the record reflect the presence of Austin, via telephone conference, and Treasurer Grace Powrie for this discussion. Deputy District Attorney William Schaeffer updated the Board regarding this matter, as follows:

"This is land that was part of what was entered by a man named Brackney under the Homestead Act back in the 20's. He got half of his land properly surveyed and entered on the tax rolls. In the old days what they used to do is if you didn't get it surveyed but you were there, that was the final thing you had to do to comply with the Homestead Act. We went ahead and taxed them anyway because they were living on the land and it was something you could sell. It had, in fact, been sold. It's called a possessory interest until you get an actual patent from the government. Under FLMPA, which was passed and took effect in 1976, all existing rights for entries were grandfathered in.

This particular property was set for a tax sale in the 80's. A letter was received from the District Manager of the BLM claiming that this was federal land and not appropriate for the tax sale. Based on that letter and discussions with the District Manager, the then County Treasurer Ila Shepherd put it on the Commissioner's agenda to withdraw it from the County sale and to authorize a deed to the BLM. The minutes clearly reflect that they withdrew it from the tax sale. They did not authorize the deed. NRS statutes make the County Commissioners in charge of all County property and no transfer or sale of such property may validly be made without their authorization. Those same statutes have not changed from 1953. Just as they read now, they read in 1986. NRS 11.255(2) states there is no statute of limitations applicable to the County for the recovery of real property.

The deed in this case stated that Ms. Shepherd was doing this on the basis of the Commissioner's agenda. She recorded the deed with the attached minutes. The minutes clearly reflect that they did not deed the property. So right there, on the face of the deed, it's invalid. I want to go back after that property. The way to do it is an action to quiet title. The reason this is important at this point in time...they're prosecuting the man who still lives there, who lived there at the time of all this back in 1986 - Dalton Wilson - on a trespass. They have specifically referenced this deed as their basis for his trespass. That's going to create all kinds of problems with us. It's not technically a legal problem. If you don't want to do this, you can just go ahead and deed it to the BLM, if that's what you want to do. I don't see the point of it. This is our land. The federal government owns more than 87% of Nevada, or at least administers it. We don't need to lose anymore land in this County or in this State. I'm willing to fight this even though it's only 80 acres of desert land."

Ms. Powrie noted the following for the record:

"We had it on the agenda a couple of month's ago. I was directed to deed it back to the County...rescind the deed as long as legal counsel gave me the okay. At this point I haven't received the direction, so, I'm in limbo under my legal counsel."

Mr. Schaeffer requested permission to file a quiet title action in this matter. Commissioner Sparks moved to allow the District Attorney's Office to file suit for quiet title on the land stated earlier. Seconded by Commissioner Chapin, the motion was voted and carried. Approved.

7)   **Discussion & Possible Action Regarding Approval Of Proposed Resolution**

**Encouraging Development Of Desalination Plants & Related Water Delivery System In Both Nevada & Contiguous States To Save Water For Use In Rural Nevada:** Let the record reflect the presence of Austin via telephone conference. The Board reviewed and discussed draft Resolution No. 2008-04, presented by Deputy District Attorney William Schaeffer, as follows:

RESOLUTION NO. 2008-04
Of The Board Of Lander County Commissioners

A RESOLUTION SUPPORTING DESALINATION AS A SOURCE OF WATER FOR CONTINUED GROWTH

WHEREAS, there have been multiple news stories and actual attempts, such as Eco-Vision in the nineties, to export water from rural, agricultural counties to our State's urban areas; and

WHEREAS, without water, we not only cannot grow, but we cannot even continue the agricultural and economic activity that we now count on to survive; and

WHEREAS, this Board is a member of the Humboldt River Coalition; and

WHEREAS, the Humboldt River Coalition was formed in response to the Eco-Vision water-grab plan in the nineties; and

WHEREAS, as recently as last month, as reported in the Las Vegas Sun, Governor Gibbons denounced plans by the Southern Nevada Water Authority to build pipelines and use them to import water from Central and Northern Nevada Counties that depend on agriculture; and

WHEREAS, due to the demands of economic growth and the political power that comes with increased population spurred by that growth, it will be impossible for the rural, agricultural counties to resist a prolonged and concerted effort to transfer water rights to the growing urban areas of Nevada; and

WHEREAS, such growth is in fact beneficial to most, if not all, Nevadans; and

WHEREAS, there are now plans afoot to try to get Federal funding to develop desalination plants along the Pacific Coast and then trade the water produced thereby for water rights closer to our urban areas and our "natural treasures" such as Walker Lake; and

WHEREAS, such a development using Federal funding could serve as a modern day TVA or Colorado River development to spur further growth in the West; and

WHEREAS, such growth would generate increasing tax revenues which should more than offset the costs involved; and

WHEREAS, some of this added water could be used for environmentally sensitive projects such as saving a "natural treasure" like Walker Lake; and

WHEREAS, there are often news reports in the Great Lake States fearful of attempts to grab water from the Great Lakes and transfer it to the West; and

WHEREAS, the Great Lakes States have formed pacts and coalitions to prevent this perceived threat; and

WHEREAS, the Governor of Michigan has sought and gotten a promise from the Governor of Arizona not to attempt such transfers; and

WHEREAS, foolish or not, the politicians of the Great Lakes States seem genuinely interested in preventing such transfers; and

WHEREAS, the Great Lakes border many of our most populous States including Minnesota, Wisconsin, Illinois, Indiana, Michigan, Ohio, Pennsylvania, and New York; and

WHEREAS, that represents a very large percentage of the total members of both the US House of Representatives and the US Senate; and

WHEREAS, those concerns for the viability of the Great Lakes watershed would be shared by our nation's largest trading partner, Canada, and three of its most populous and productive provinces, namely Manitoba, Ontario, and Quebec; and

WHEREAS, this confluence of interests between our nation's Western States, Great Lakes States, and our largest trading partner and some of its most prosperous and populous areas, should allow for the political will to spend the potential billions of dollars that such programs could cost; and

WHEREAS, there are already pressing needs in our Western urban areas for water due to their phenomenal growth;

**Provide Safety, Quality Service & Responsible Fiscal Management
For Present & Future**

and

**WHEREAS,** due to such needs and such growth, time is not on our side.

**NOW, THEREFORE BE IT RESOLVED,** that the Lander County Board of County Commissioners, on behalf of themselves and their fellow citizens of Lander County, request that our Congressional delegation and our State officials seriously explore the possibility of getting one or more Federal projects to build desalination plants on the Pacific Coast and trade the resulting water for uses in the Desert West including environmental uses such as aiding Walker Lake or the Stillwater Wildlife Refuge.

**AND BE IT FURTHER RESOLVED,** that we urge our sister counties to likewise support such actions.

**AND BE IT FURTHER RESOLVED,** that we urge the relevant organizations of which we are members, such as the Humboldt River Coalition, the Central Nevada Regional Water Authority, the Nevada Association of Counties, and even the National Association of Counties to also support exploration of ways to make such projects a reality in the near future and not just another pipe dream relegated to the ash heap of history,.

**AND BE IT FURTHER RESOLVED,** that this Resolution be circulated widely and that all citizens be encouraged to contact their various public officials to support development and implementation of desalination plans so as to insure that our children have a better, even more prosperous future than we have been thus far blessed to enjoy in this wonderful country of ours.

Mr. Schaeffer noted the following for the record:

"I've got a confluence of interest in this situation. I am also working for a client who is involved in the Walker Lake litigation. We are involved in a desalination plan along these lines to help Walker Lake. I just want to let you know this is a confluence of interest with my private practice."

Commissioner Sparks moved to propose a resolution supporting desalination as a source of water for continued growth; and authorize the Chair to sign. Seconded by Commissioner Chapin, the motion was voted and carried. Resolution Approved.

8) **Discuss & Approve/Disapprove Amendment To Lander County Code, Section 6.08, Regarding Dogs: Spaying, Neutering & Lessening The Time Allowed For Spaying Adopted Dogs: & Other Matters Properly Relating Thereto:** Let the record reflect the presence of both Austin and Commissioner Steven Stienmetz for this discussion via telephone conference. The Board reviewed and discussed a draft ordinance to provide better procedures for spaying or neutering adopted dogs, as presented by Deputy District Attorney William Schaeffer. Mr. Schaeffer made the following comment for the record:

"I went ahead and prepared an ordinance basically changing half of one hyphenated word, from the 91st day to the 31st day following the adoption. The problem Undersheriff Quick identified is that the folks at the pound are telling him that spaying for dogs is running at about six weeks, which would be more or less 45 days. I don't think you'd want us to be forced into a position where we're prosecuting people who cannot get themselves an appointment to get the dogs spayed or neutered within a reasonable time."

Commissioner Stienmetz made the following comment for the record:

"If they can't get them spayed in 90 days, they ought to have proof that they have an appointment to have them spayed. I don't think veterinarians are that busy that you can't get them spayed within 90 days."

Mr. Schaeffer requested that this matter be deferred to later in the day to allow for another re-write of the draft ordinance. *Let the record reflect that this matter was revisited later in the morning.* The Board reviewed and discussed the revised draft ordinance to provide better procedures for spaying or neutering adopted dogs, as presented by Mr. Schaeffer. Commissioner Sparks moved to accept the ordinance replacing Lander County Code Title 6, Chapter 6.08, Section 6.08.120 by repeal and amendment, to provide better procedures for insuring the humane treatment of animals, to promote efficient and economical licensing of dogs, and to allow for more choice in adopting dogs. Seconded by Commissioner Chapin, the motion was voted and carried. Ordinance Proposed.

9) **Discussion & Possible Action Regarding Proposal Of An Ordinance To Allow Voting At-Large For Some Or All Commission Districts; & Other Matters Properly Relating Thereto:** Let the record reflect the presence of both Austin and Commissioner Steven Stienmetz for this discussion via telephone conference. The Board reviewed and discussed a draft ordinance to provide for five county commissioners elected at-large to serve the people of Lander County, as presented by Deputy District Attorney William Schaeffer. Mr. Schaeffer made the following comment for the record:

> "This was called for and is duly on the agenda. I did checking on it. I have an opinion on it. I didn't give it to you yet because I sent it off by fax earlier this week to the Secretary of State's Office/election division. They haven't gotten back with me so I don't know if they agree with me or not. I can give you that opinion or I can suggest that you table this. My opinion, because of the way the statute is phrased, is you can't do the hybrid you wanted to do."

There was general consensus in favor of deferring this matter to a future Commission meeting to allow time for a response from the Secretary of State's Office. Austin resident **Ray H. Williams, Jr.** appeared before the Board to state his support for putting this issue on the ballot and letting *the voters decide if they want to vote at-large.* Let the record reflect that this matter was deferred to a future Commission meeting. Deferred.

## PUBLIC WORKS

10) **Discussion & Possible Action Regarding Request To Install Gates At The Battle Mountain Cemetery:** Let the record reflect the presence of Austin, via telephone conference; Public Works Director Roger Sutton; and Treasurer Grace Powrie for this discussion. The Board reviewed and discussed a quote from Artistic Fence Company, in the amount of $5,431.00, for installation of two sliding gates at the Battle Mountain Cemetery, as presented by Mr. Sutton. Mr. Sutton made the following comment for the record:

> "We really don't think the animals are coming in. We believe they're being brought in by people

visiting the graves. After talking to Grace, we came up with the idea of shutting the two back gates to make sure no strays get in and putting signs on the cemetery saying *No Animals Allowed*. We believe that will eliminate the problem."

Austin resident **Ray H. Williams, Jr.** appeared before the Board to make the following comment for the record:

"I think a lot of people go to the cemetery to visit their deceased. Their dog might be the only partner they've got left. I don't see anything wrong with walking in there with a dog."

There was general consensus in favor of posting some type of signage at the Battle Mountain Cemetery. No Action - Discussion Only.


## KINGSTON TOWN BOARD/KINGSTON GENERAL IMPROVEMENT DISTRICT

11) **Discussion & Possible Action Regarding Request By Kingston Town Board & Kingston General Improvement District For Lander County To Temporarily Take Over The Kingston General Improvement District (GID):** Let the record reflect the presence of Austin, via telephone conference, and Treasurer Grace Powrie for this discussion. Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

    ✳    The Kingston Town Board voted, during a regular meeting held January 30, 2008, & the Kingston General Improvement District voted, during a regular meeting held on February 20, 2008, for the LC Board of Commissioners to temporarily take over the Kingston General Improvement District (GID);

    ✳    The Board of County Commissioners serve as the *de facto* board for any General Improvement District within the County, pursuant to the provisions of NRS 318.0953 & NRS 317.144 & can exercise all authorities, responsibilities & powers as a separate, elected GID Board.

Deputy District Attorney William Schaeffer made the following comment for the record:

"The only reason for the GID at this point...the only logical reason that makes sense and frankly the reason it came into existence was that it was thought that the Town was going to bump up against its statutory limits for taxation or bonds. The GID doesn't have those same limitations. They can go beyond that. The problem is, though, that some of the things they can go beyond would affect other bonding the County does, which can cause problems for Grace Powrie and could cause trouble for the County as a whole. My suggestion is that the County Commissioners become the GID, which is allowed by the statutes. Then, if it's needed, you can act right away as you're always here. It just seems to me it's more efficient that way."

Austin resident **Ray H. Williams, Jr.** appeared before the Board to make the following comment for the record:

"I'm with the 318 GID in the Austin Sewer and Water District. One thing that comes into play is the

boundaries. At one point we were serving outside our boundaries, so we expanded the GID boundaries. As a GID we can charge an assessment on delinquent properties. In past history when I was on the Kingston Town Board we were trying to collect fees and nobody would pay them because they felt the Town couldn't collect 'em."

Commissioner Sparks moved that the County Commission take over the authorities, responsibilities and powers of the Kingston General Improvement District, on a temporary basis, and refer the daily duties of management and operation of the Kingston Town Water System to the Kingston Town Utilities Board. Seconded by Commissioner Chapin, the motion was voted and carried. Approved.

## PLANNING COMMISSION

12) **Discuss & Approve/Disapprove Recommendation By The Planning Commission To Adopt The Kingston Town Board Proposed Kingston Master Plan:** Let the record reflect the presence of Austin, via telephone conference; Community Development Specialist Deborah Teske; and Kingston Town Board Chairman Guy Rock for this discussion. The Board reviewed and discussed the 2008 Town of Kingston Master Plan Proposal, as presented by Mr. Rock. Mr. Rock requested adoption of the Kingston Master Plan, subject to codification and final publication. Commissioner Sparks addressed his concern that Skip Canfield, who was hired to review master plans for both Kingston and Austin, has not reviewed the Kingston master plan. The Board reviewed and discussed the Lander County Planning Commission's March 7, 2008 recommendation to adopt the proposed Kingston Master Plan, as submitted. Commissioner Sparks moved to uphold the recommendation of the Planning Commission and adopt the Kingston Master Plan, subject to codification and final publication. Seconded by Commissioner Chapin, the motion was voted and carried. Approved.

## LOCAL EMERGENCY PLANNING COMMITTEE

13) **Discuss & Approve/Disapprove FY 2009 SERC (State Emergency Response Commission) Planning, Training & Equipment Grant For Local Emergency Planning Committee:** Let the record reflect the presence of Austin, via telephone conference, and Mark Langston, LEPC Vice-Chairman, for this discussion. The Board reviewed and discussed the FY 2009 State Emergency Response Commission Planning, Training and Equipment grant for Local Emergency Planning Committee, in the amount of $29,965.28, as presented by Mr. Langston. Commissioner Sparks moved to approve the FY 09 SERC (State Emergency Response Commission) Planning, Training and Equipment grant for Local Emergency Planning Committee. Seconded by Commissioner Chapin, the motion was voted and carried. Approved.

Provide Safety, Quality Service & Responsible Fiscal Management
For Present & Future

14) **Discuss & Approve/Disapprove Letter Of Appreciation To Bruce Ferrel Of State Emergency Response Commission For His Assistance In Getting The Lander County Emergency Planning Commission Back On Track:** Let the record reflect the presence of Austin, via telephone conference, and Mark Langston, LEPC Vice-Chairman, for this discussion. Mr. Langston requested approval to send a letter of appreciation to Bruce Ferrel of the State Emergency Commission for his assistance in getting the Lander County Emergency Planning Commission back on track. There was general discussion and confusion as to whether or not a letter had already been sent to Mr. Ferrel expressing appreciation for his assistance in getting LEPC back on track. Let the record reflect that this matter was discussion only. No Action - Discussion Only.

## COMMISSIONERS

15) **Discussion & Possible Action On The Following Projects/Services:** Let the record reflect the presence of Austin via telephone conference.

**Airport Projects:** Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

> "We've asked four times from our prior airport consulting firm for the electronic version of the Austin and Battle Mountain Airport layout plans and the project down in Austin to do with the road. If we don't receive that within the next week, I'm going to be requesting our District Attorney's Office to write that consultant a much stronger letter. They don't seem to respond to phone calls either from myself or staff."

No Action - Update Only.

**Ambulance Service:** Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

> "On April 10th there will be a provider of ambulances that will be at the County Administrative Offices. We'll be able to view another ambulance vehicle. We have a list of twelve names in Austin that are interested in taking an EMS/EMT course. I'm working with State EMS to find out if we can get a course for Austin. We will be trying to find folks to conduct courses here in Battle Mountain. I think we have enough of us on the Battle Mountain Ambulance Service that are qualified to teach. If not, we may have to have that course conducted in Elko, Carlin or Winnemucca. Our current Chief has indicated his unwillingness to teach any further courses. We may be put at a disadvantage to conduct our own courses.
> We're operating an ambulance service right now that is running aside from its organizational structure. The Chief has a certain key role. Right now I'm not sure what that role is because we're conducting everything aside from the service. I can provide the level I'm providing right now. This County does not have a EMS Coordinator position. I'm performing that right now. We can conduct classes here in Battle Mountain."

Deputy District Attorney William Schaeffer made the following comment for the record:

"The possibility exists that there's some way to reorganize the ambulance service. I'll work with Gene to see if we can come up with some solutions."

No Action – Update Only.

**Economic Development:** Executive Director Gene Etcheverry updated the Board regarding this matter, as follows:

"LEDA is moving ahead with a whole new intensity. It appears that the State of Nevada's vision of having three super EDA's statewide is not going to happen."

No Action – Update Only.

**Public Lands:** Executive Director Gene Etcheverry stated that he had nothing to report regarding this matter at the present time. No Update.

**Street/Road Projects:** Public Works Director Roger Sutton updated the Board regarding the status of the Altenburg Avenue, Weaver Avenue and Sixth Street reconstruction project. Commissioner Sparks addressed his concerns regarding the following issues:

"I talked to Roger earlier about our street sweeper and sweeping these roads. He said people aren't moving their cars so it makes it tough. I made a suggestion to Roger that maybe we could make a phone call to these people to move their cars.

There's been a few people that have approached me around town who say the alleys haven't been bladed for a long time. Do we have any sort of schedule for blading alleys?

Another question I had was 26th Street/White Sage Lane. I talked to Roger about it. There's somebody who lives out there who could have sworn back in '99 or 2000 that the road was accepted into County maintenance, but it hasn't been maintained. They wanted us to look into if it was actually accepted. They swear up and down that it was accepted, that Ira Mattice accepted it into the County maintenance portion of the road. I told them that we would look into that. Maybe we can look into the minutes.

The last thing...and I talked to Roger about this. Out there in Carico Valley where the Filippini Ranch is there's a section of road that Roger says is about two miles long that Jimmy says when it gets wet it's impassable. He said he's being trying for fifteen years to get it graveled up."

No Action – Update Only.

## ADJOURNMENT

There being no further business before the Board at this time, Commissioner Sparks moved to adjourn the meeting of March 13, 2008. Seconded by Commissioner Chapin, the motion was voted and carried. Meeting Adjourned.

**Provide Safety, Quality Service & Responsible Fiscal Management
For Present & Future**

CHAIRMAN OF THE BOARD OF LANDER
COUNTY COMMISSIONERS AND THE
LANDER COUNTY LIQUOR BOARD

ATTEST: _____

**LANDER COUNTY CLERK**

*Note: The Board of Lander County Commissioners serves as the Town Board for the unincorporated towns of Battle Mountain and Austin, Nevada.*

CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS was made through the Court's electronic filing and notification or, as appropriate, by sending a copy thereof by first-class mail from Reno, Nevada, addressed to the following addressee(s) on July 14, 2008.

William E. Schaeffer, Esq.
Assistant District Attorney
315 S. Humboldt Street
P.O. Box 187
Battle Mountain, NV 89820

　　　　　　　　　　　　　　　<u>Greg Addington</u>
　　　　　　　　　　　　　　　GREG ADDINGTON